UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KADIR LENGESSO,

Petitioner,

v.

CURTIS J. ALJETS, District Director, Immigration and Naturalization Service,

Respondent.

Civil File No. 01-996 (DSD/FLN)

**REPORT AND RECOMMENDATION**

Kadir Lengesso, Jefferson County Detention Center, 102 West "C" Street, Waurika, Oklahoma, 73573, Petitioner, pro se.

Friedrich A.P. Siekert, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

FRANKLIN L. NOEL, Chief Magistrate Judge

Petitioner commenced this action by filing an application for habeas corpus relief pursuant to 28 U.S.C. § 2241. He claims that he is being detained by the United States Immigration and Naturalization Service, (INS), in violation of his rights under federal law and the Constitution. Respondent denies Petitioner's claims, and has filed a motion to dismiss his habeas petition. Petitioner has submitted three letters which were received by the Court on August 28, 2001 (Docket Entry #19), September 26, 2001 (Docket Entry #22), and January 15, 2002 (Docket Entry #24). The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court finds that Petitioner is not entitled to habeas corpus relief. It will therefore be recommended that this action be DISMISSED WITH PREJUDICE.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Petitioner was born in Ethiopia and is a citizen of that country. In the early 1980s he went to Sudan to escape violent conflict in his homeland, and in 1983 he came to the United States as a refugee. He became a permanent resident alien in 1989.

During the 1990s, Petitioner was convicted several times for drunk driving. His criminal record also includes several arrests for assault, trespass, battery and other traffic law offenses. His most recent drunk driving conviction occurred in 1997 in South Dakota, and caused him to be sent to prison for three and a half years.

Petitioner's last two drunk driving convictions (his fourth and fifth such offenses) are considered to be "aggravated felonies" under the federal immigration laws, making him subject to removal from the United States, (i.e., deportation), pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).[1] Therefore, on June 30, 2000, the day that Petitioner was scheduled to be released from the South Dakota Penitentiary, the INS initiated the process of having

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The statutory definition of an "aggravated felony," includes "a crime of violence... for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).

In a reply memorandum opposing Respondent's motion to dismiss, Petitioner has argued -- for the first time -- that his drunk driving offense is not an "aggravated felony" that could justify his removal. (Letter dated August 25, 2001, [Docket No. 19], p. 2, citing Bazan-Reyes, 256 F.3d 600 (7th Cir. 2001).) That argument will not be entertained here, however, because it was not fairly presented in Petitioner's original habeas corpus petition, and Respondent therefore has not had a fair chance to respond to it. Furthermore, it is doubtful whether this Court can properly review the merits of an INS removal decision. See Velazquez v. Immigration and Naturalization Service, 876 F.Supp. 1071, 1075 (D.Minn. 1995) (Kyle, J.) ("Federal district courts do not have subject matter jurisdiction to review final deportation orders. Instead, the Courts of Appeals are vested with exclusive jurisdiction to review decisions made during a deportation hearing."); see also Badio v. United States, ___ F.Supp.2d ___, No. Civ. 01-1963 (DSD/FLN) (D.Minn. Nov. 21, 2001) (Doty, J.), 2001 WL 1485632 at *3 ("[j]udicial review of immigration matters is limited").

him removed from this country. (Respondent's Exhibits, [Docket No. 18], Exh. A.) Instead of being freed when his South Dakota prison term expired, he was immediately taken into custody by the INS, pending the completion of his removal proceedings.

On August 29, 2000, an Immigration Judge entered an order directing that Petitioner should be removed to Ethiopia. (Id., Exh. C.) Because Petitioner did not file an appeal with the Board of Immigration Appeals, the Immigration Judge's order became a final removal order. Petitioner is still in the United States only because the final removal order has not yet been carried out.

Petitioner has not yet been removed to Ethiopia because that country has not yet agreed to take him back. Respondent has submitted a declaration made by the INS's Acting Director for Removals, Michael D. Rozos, which explains why Petitioner's removal has not yet been accomplished. (Docket No. 17.) According to Rozos:

> "The Government of Ethiopia does issue travel documents for the purpose of removal. [However] [i]ssuance of these documents is extremely slow and may take as long as 15 months, depending on the circumstances."

(Rozos Decl., p. 2.) Rozos further reports that "[o]ver the past 5 years INS records indicate that 172 citizens of Ethiopia have been removed/deported from the United States." (Id.)

Respondent has also submitted a declaration made by INS Deportation Officer Benjamin T. Jorgenson, who has been personally involved in the effort to complete Petitioner's removal to Ethiopia. (Docket No. 16.) Jorgenson reports that he has been in contact with government officials from Ethiopia on a regular basis, trying to complete the final arrangements for Petitioner's removal. In his declaration, Jorgenson states that "[i]t commonly takes some persistence and cajoling of the Ethiopian Embassy to get them to issue a travel document" to complete the removal process. (Jorgenson Decl., p. 2.)

Jorgenson remains "hopeful" that the Ethiopian government will eventually issue the travel documentation needed to complete Petitioner's removal from the United States. (Id.)

Petitioner has remained in INS custody at all times since he left the South Dakota Penitentiary in June 2000. When he filed his present habeas corpus petition in June 2001, he was being held at the Minnesota Correctional Facility in Rush City, Minnesota. Just recently, however, Petitioner informed the Court that he has been moved to a detention facility in Oklahoma.[2]

In his current habeas corpus petition, Petitioner challenges the constitutionality of his continuing detention by the INS. His petition lists three grounds for relief:

(1) that the INS has violated his constitutional right to due process by keeping him in custody after he completed his state prison sentence;

(2) that the INS has violated his rights under the Constitution's double jeopardy clause by keeping him in custody after he completed his state prison sentence; and

(3) that the INS is violating his right to equal protection by keeping him in custody because of his race and/or nationality.

Petitioner is not entitled to a writ of habeas corpus on any of his three claims for

---

[2] Petitioner's current habeas corpus petition can still be heard and decided here in Minnesota, notwithstanding his transfer to another state. See McCoy v. United States Board of Parole, 537 F.2d 962, 966 (8th Cir. 1976) (the federal court for the district where a prisoner was incarcerated when he filed his habeas corpus petition does not lose jurisdiction when the prisoner is transferred to another district while his petition is still pending).

relief.[3]

## II. DISCUSSION

### A. Due Process Claim

Petitioner initially contends that the INS is violating his right to due process, by keeping him in custody pending his removal to Ethiopia even though he is not presently serving any state or federal prison sentence. The resolution of this claim is governed by the Supreme Court's decision in Zadvydas v. Davis, 121 S.Ct. 2491 (2001).

In Zadvydas, the Court considered the due process claims of two resident aliens who were being detained by the INS after they had been ordered to leave the United States because of crimes they committed while living here. The INS was not able to actually complete the removal of the two aliens, because no country would accept them. Acting pursuant to 8 U.S.C. § 1231(a)(6), the INS kept both of the aliens in custody,

---

[3] In a memorandum in support of his petition, (Docket No. 2), Petitioner makes several references to the conditions of his confinement at the Minnesota Correctional Facility in Rush City. He seems to be suggesting that he should be released from custody because he has been subjected to "cruel and unusual punishment" in violation of the Eighth Amendment. If Petitioner is asking for habeas relief based on an Eighth Amendment claim, that request must be rejected for at least two reasons. First, the petition itself, which identifies the claims to be adjudicated in this matter, makes no reference to the Eighth Amendment. More importantly, a prisoner cannot gain his freedom simply by alleging, or even by proving, that his Eighth Amendment rights have been violated. Petitioner might be able to bring a civil rights claim against any individual(s) who subjected him to cruel and unusual punishment during the course of his confinement in Rush City, and he might be entitled to some traditional civil remedy, (e.g. money damages and/or an injunction), upon proving such a claim, but Petitioner cannot secure a writ of habeas corpus causing him to be released from custody based only on a claim that the conditions of his confinement are (or were) unconstitutional. See Gomez v. United States, 899 F.2d 1124, 1126 (11th Cir. 1990) ("Assuming arguendo that his allegations of mistreatment demonstrate cruel and unusual punishment, the petitioner still would not be entitled to release from prison. The appropriate remedy would be to enjoin continuance of any practices or require correction of any conditions causing him cruel and unusual punishment.").

pending completion of the removal process. Because there was no reason to believe that any country would accept them at any time in the foreseeable future, the two aliens were facing indefinite INS detention, even though they had already fully served their prison sentences for their crimes.

8 U.S.C. § 1231(a)(6), the statute that authorizes the INS to detain removable criminal aliens pending the execution of removal orders, provides as follows:

> "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

The "removal period" referred to in § 1231(a)(6) is a 90-day period following the entry of a removal order. 28 U.S.C. § 1231(a)(1). Paragraph (3) of § 1231(a), (referred to at the end of § 1231(a)(6)), directs the INS to impose certain terms and conditions of release for aliens who are subject to removal orders, but have not yet been removed by the end of the 90-day removal period.[4]

---

[4] Paragraph (3) of 1231(a) states that –

> "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien --
>
> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

In Zadvydas, the Supreme Court considered whether the INS could detain removable aliens indefinitely pursuant to § 1231(a)(6). The Court noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 121 S.Ct. at 2498. The Court concluded, however, that § 1231(a)(6) was not unconstitutional, because the statute, as construed by the Court, did not actually authorize indefinite INS detention. As explained by the Court –

> "[W]e read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention."

Id.

Thus, the Court concluded in Zadvydas that a removable criminal alien cannot be detained indefinitely, but he can be lawfully and constitutionally detained for a "a period reasonably necessary to bring about that alien's removal from the United States." The Court further held that six months is a presumptively reasonable time in which to complete an alien's removal. Id. at 2505. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. If an alien's continuing detention is found to be permissible under this analysis, then he does not have a valid due process claim.

In the instant case, Petitioner's final removal order was entered in August 2000, and the presumptively reasonable period for completing Petitioner's removal (per Zadvydas)

---

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."

ended six months later, in February 2001. Because the reasonable period for completing removal has long since expired, this Court must consider whether Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If he has made such a showing then the Court must further determine whether Respondent has offered "evidence sufficient to rebut that showing." Id.

Respondent contends that Petitioner is not entitled to relief under Zadvydas because he has not met his initial burden of showing that his removal is unlikely to be completed in the reasonably foreseeable future. The Court agrees. Petitioner has made no effort to show that his removal is unlikely to be completed any time soon. Even after Respondent presented evidence showing that removal is still expectable, Petitioner offered no evidence to the contrary. Thus, he has clearly failed to meet his initial Zadvydas burden.

Respondent, on the other hand, has presented substantial evidence showing that, in fact, there is a significant likelihood that Petitioner's removal will be completed in the foreseeable future. The declarations of Benjamin T. Jorgenson and Michael D. Rozos, (Docket Nos. 16 and 17), indicate that the INS is making a diligent effort to get Petitioner removed to Ethiopia. More significantly, those declarations show that there really is good reason to believe that Petitioner will be sent back to Ethiopia before too much longer, (although the process obviously is taking much longer than the INS would like).

Rozos' declaration shows that, historically, Ethiopia has taken back its citizens who have been ordered out of the United States. His declaration indicates that the INS has developed a working relationship with the government of Ethiopia, that Ethiopia regularly

(although "slowly") issues travel documentation needed to effect removal, and that, based on past experience, Petitioner's removal to Ethiopia "is feasible in the foreseeable future." (Rozos Decl., p. 2.) Jorgenson's declaration shows that he personally has made numerous efforts to secure the travel documents needed to effect Petitioner's removal. Jorgenson confirms that the process of getting the necessary travel documents can be lengthy and difficult, but he continues to be "hopeful" about the chances of completing Petitioner's removal within a matter of months. (Jorgenson Decl., p. 2, ¶ 6.)

In short, the Court is satisfied that there is a significant likelihood that Petitioner will be removed to Ethiopia in the reasonably foreseeable future. This means, according to Zadvydas, that Petitioner's current INS detention is legally and constitutionally permissible. Petitioner's due process claim must therefore be rejected.

B. Double Jeopardy Claim

In his second ground for relief, Petitioner contends that his continuing detention by the INS, after the completion of his state prison sentence, violates the Constitution's double jeopardy clause. Although Petitioner's double jeopardy argument is not clearly explained, it is reasonable to infer that he is claiming that his current INS detention should be viewed as a "second punishment" for his drunk driving offenses. He apparently believes that the INS is now incarcerating him for state criminal offenses for which he has already fully served his court-ordered prison sentence, and that he is therefore being punished a second time for his last drunk driving offense, in violation of the double jeopardy clause.

Petitioner's double jeopardy argument must be rejected, because it is based on the erroneous premise that his current INS detention is actually a form of punishment for a

crime. In fact, Petitioner is not presently being punished for any crime. He is simply being detained, administratively, pending the consummation of his removal order. He is not being confined to punish him for a crime; he is being confined only to ensure that he will be available for removal from the United States as soon as the Ethiopian government agrees to accept him.

The reasons for denying Petitioner's second claim for relief are well-explained im Chukwurah v. United States, 813 F.Supp. 161, 167 (E.D.N.Y. 1993):

> "Generally, the constitutional prohibition of double jeopardy is offended where a criminal defendant is subjected to a second prosecution for the same offense after conviction or acquittal and where a criminal defendant is subjected to multiple punishments for the same offense. See generally Illinois v. Vitale, 447 U.S. 410, 415... (1980). The current detention of petitioner by the INS does not amount to punishment and hence does not implicate the constitutional protection against double jeopardy....
>
> A deportation proceeding is not a criminal prosecution but is a civil action collateral to any criminal proceeding. See United States v. United States Currency in the Amount of $228,536, 895 F.2d 908, 915 (2d Cir.), cert. denied, 495 U.S. 958... (1990); United States v. Hernandez, 588 F.2d 346, 351-52 (2d Cir.1978); Kandiel v. United States, 964 F.2d 794, 796 (8th Cir.1992); [additional citations omitted].... Hence, deportation proceedings do not constitute a 'second prosecution.'
>
> Further, the consequence of deportation and its attendant hardship on the deported alien, including interim incarceration, are not forms of punishment. See Linnas v. INS, 790 F.2d 1024, 1030 (2d Cir.1986), cert. denied, 479 U.S. 995...(198[6]); see generally Mahler v. Eby, 264 U.S. 32, 39... (1924). Rather, the power to expel an alien convicted of crimes in this country is a fundamental sovereign attribute exercised by the government's political departments; decisions to expel an alien reflect concerns about national interests, not a desire to punish the expelled alien. Fiallo v. Bell, 430 U.S. 787, 794-96... (1977).
>
> Thus, notwithstanding the fact that the deportation proceeding and petitioner's current detention stem from his conviction, he is not being subject to multiple penalties for the same offense. Hence neither the deportation

proceeding nor the attendant incarceration of petitioner offend double jeopardy principles."

The foregoing discussion is fully applicable here, and fully explains why Petitioner's double jeopardy claim must be rejected.

C. Equal Protection Claim

In his third ground for relief, Petitioner claims that the INS is violating the equal protection clause, because his INS current detention is "racially and nationality biased." This claim must be rejected, because Petitioner has offered no facts to support it.

If Petitioner could show that Africans in general, or Ethiopians in particular, are being detained by the INS pending removal, while similarly-situated aliens of other races or nationalities are not being detained, then he might have a colorable equal protection argument. In fact, however, Petitioner has cited nothing more than his own self-serving conclusory allegations in support of his equal protection claim. Reported federal caselaw clearly suggests that convicted criminal aliens of all races and nationalities face the prospect of INS detention pending the completion of removal.[5] Petitioner's equal protection claim must be summarily rejected, because he has offered no reason to believe that he is being treated differently from other convicted criminal aliens of other races or nationalities who are awaiting removal from the United States.

**III. CONCLUSION**

For the reasons discussed above, the Court concludes that Petitioner's present

---

[5] In Zadvydas, for example, one of the aliens facing indefinite INS detention was Asian and the other was European.

detention by the INS is legal and constitutional, and that he is not entitled to a writ of habeas corpus on any of the claims raised in his petition. It will therefore be recommended that this action be dismissed with prejudice.

Finally, the Court notes that Petitioner has filed a self-styled motion entitled "Petitioner Kadir Lengesso Request Motion For Court's Hearing For the Matter Of Above The Case!," (Docket No. 20), in which he appears to be asking the Court to conduct a hearing in this matter. However, Petitioner has not identified any specific evidence that he would intend to introduce at such a hearing, nor has he identified any legal arguments that could be presented only at such a hearing. Petitioner's request for a hearing should therefore be denied.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus, (Docket No. 1), be DENIED;
2. Respondent's motion to dismiss, (Docket No. 14), be GRANTED;
3. Petitioner's "Motion For Court's Hearing," (Docket No. 20), be DENIED; and
4. This action be DISMISSED WITH PREJUDICE.

DATED: January 18, 2002.

Franklin L Noel

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the

portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.